Case 24-2458, Southern District of Iowa, United States v. Brad Wendt Nick Kleinfeld Counsel, may it please the Court. My name is Nick Kleinfeld. I'm here today on behalf of Appellant Brad Wendt. Unless the Court has any questions regarding the sentencing, I'd like to focus my time today on what I think is the real heart and soul of this case, and that is the regulation by prosecution by the ATF of former police chief Brad Wendt. Now, I think the easiest way to understand this case is that we're talking about two new requirements that the ATF imposed on Mr. Wendt. One is the future potential purchase requirement, and two is the official use restriction requirement. Now, there's also two groups of charges that we're talking about today, and I think that's the easiest way to understand the charges. One group is the illegal possession of a machine gun. The second group is what we would call the false statement charges, and that includes a conspiracy to make false statements. I want to start with what I think is the easiest issue, and that's the illegal possession of a machine gun. As far as we know, Brad Wendt is the only police officer ever to be convicted by the federal government of illegally possessing a machine gun. The only other case we know of that actually addressed this was the Vest case that we cite extensively in our brief. In that case, the district court said, wait, this is unconstitutionally vague as applied to this defendant. But in that case, nobody contested that Vest had always possessed it in connection with his work as a law enforcement officer. The court also made clear, though, that that was not key to its decision, that it was still unconstitutionally vague. Possession and use are different. Here, I believe Mr. Wendt has an even stronger case than Mr. Vest did for several reasons. First, is that Mr. Wendt was the police chief. As you recall, Mr. Vest, the issue there, I believe, was that he may have used a letter inappropriately to get the machine gun. In the first place, he was a training officer. Mr. Wendt was vested with the authority by the city of Vidaire to authorize these purchases. Now, in addition, what is a fatal flaw to the government's theory Is this inherent in his position as the police chief, or is it the result of some delegation? Because if you look at the statute itself, it says that you have to possess it under the authority of a political subdivision. Vidaire is a political subdivision of the state. And so the question really is, under the authority of, right? And you're going to claim that, well, that's so vague we don't know what it means. But I think that it should be plain that it requires some evidence of acting under the authority of, right? And that doesn't seem to be so vague. I mean, it's like either it's inherent because the police chief has that authority generally, or it was delegated. My question is, do you have evidence of either? Yes. And so here, as your honor pointed out, it's possession by or under authority of a political subdivision or a state. Is the political subdivision in possession of a weapon that's never in the image? It's not at the police station. It's not being carried around by anyone in the course of their business. I mean, it's just not there. And so possession by seems to be a rather tenuous argument. It seems that it must be under the authority of. And the authority of has to be in a situation where either it's been authorized or it's inherent in the job of police chief. Well, to take a step back, I think I can make it even easier. OK. It's not just possession by or under the authority of a political subdivision. It's of a state. And so the state has the authority to authorize the possession of a machine gun. That is clear under 922. The state of Iowa exercised that authority and gave police officers the right to possess a machine gun. They also, the state of Iowa, gave licensed dealers the authority to possess a machine gun. Brad Wendt was both. In addition to that, as police chief, he not only went and got the city council's approval, but the mayor, the person who was mayor at the time, testified at trial that this machine gun shoot that he was, where he was, that was the basis charge for the possession count, was consistent with the authority that he gave Mr. Wendt. I would contest that the mayor didn't even need to give it to him, but that was the trial record. Now, the illegal possession of a machine gun charge... What's the theory behind that? What's the theory behind having a gun shoot with a machine gun at your private gun shop? What's the mayor's theory, anybody's theory, that that's under the authority of the Adair Police Department? Training. So it was actually at a farm. This is a public, it's a public show, right? Like you come in, the public comes in, pays 20 bucks to shoot the machine gun. That's training the public, not the officers. It was a little bit different than that, Your Honor. What actually happened was that it was held at a farm. Because these are machine guns, the rounds travel quite a distance, you have to do it in a safe place. And so it was not held in the city of Adair, or at the police department, or at BW Outfitters, just as most training in the state of Iowa is held at the Iowa Law Enforcement Academy, which is in Johnston, Iowa, outside of most everyone's officer's jurisdiction except in Johnston. And so what actually happened that day was that he had a machine gun shoot at this farm, invited law enforcement officers, many of whom testified at the trial. They did not pay to shoot. They got to shoot for free. And in fact, they're the ones who staffed the machine guns for people. So it doesn't matter that there are private citizens there that aren't there for training? I don't think it does. And to be clear. Why not? Well, to be clear, what they were paying for is the cost of the ammunition. Brad Witt didn't make any money off of this. That was clear in the trial. They were actually paying for the round. And that subsidized the rounds that the police officers were shooting for free that day. And that is a use. Regardless of that, he was authorized by the state of Iowa to possess a machine gun that day as both a licensed dealer and police officer. The official use requirement, which is the basis for the government's theory there, makes absolutely no sense. And I'll give you an easy reason why. The basis for the official use restriction is that, well, look. When a machine gun is transferred, it is stamped. And it has a restriction on it. And that restriction basically just says, follow the law. But what the restriction is there for is to designate it as a post-1986 non-transferable machine gun. That's undisputed. And so what the government's theory is that there's this official use possession restriction based on that stamp. That argument falls apart because the same stamp is on the dealer's sale sample guns. And the government concedes, as it must, that there is no subsequent use restriction on the same gun with the same restriction stamp when a dealer gets it. In other words, when the dealer has that machine gun, then the dealer can turn around and hold machine gun shoots and allow a bunch of 21-year-olds at a bachelor party to shoot this machine gun who have no connection whatsoever with a government or any government purchasing. Well, I was wondering about this. See, one of the things that concerns me about the prosecution here, and I'll have a discussion with opposing counsel, is what you're describing is not unusual at all. I have been on one of those shoots where actually it was FBI was doing it. I was part of the FBI Citizens Academy, and there were a bunch of ordinary citizens. It's pretty common. And one of the things that bothers me is if we hold precedential here, all of those things will potentially make FBI agents liable for holding citizen shoots and things like that. And I wonder if any of that was brought out in the record. It was. In fact, one of the witnesses was the state senator for the district where the machine gun shoot was held who just by happenstance had attended the machine gun shoot and paid to shoot a machine gun. And he testified how that was helpful to him in his duties, but he was also interested. This happens all the time. In fact, one of the witnesses, our witnesses, while he was employed by the ATF, described how he would hold machine gun shoots on behalf of the ATF for politicians who had not only shoot themselves but had their kids or significant others shoot. Then your theory is that it was an official use. So you're saying he had the authority, he was doing it under the authority of the political subdivision, he even had the mayor's blessing, he had officers there for training. So it seems to me that then your argument is, but it was. It was official use. I think it was, but it didn't need to be. And my point is that that requirement has no basis in the law and makes no sense and is inconsistent with other applications such as dealer sales samples. Now the other group of counts is the false statement counts. And here's how that official use restriction requirement applies to those. Mr. Witt was convicted of one count for what was deemed a purchase law letter, which actually doesn't exist, but that's what they called it, a purchase law letter. Can I just back up? What do you mean by it doesn't exist? The evidence was adduced at trial that that was not a real thing, that that was not a term of art typically used in the industry. That was something that the government started using at the trial to make it sound equivalent to a demonstration law letter. So the purchase law letter count was based on the official use restriction, and here's why. Here's why it was infected by that requirement. The jury was told via that possession count that there is a official use possession restriction that follows the transfer of the gun. And so if he violated that, then he violated the statute. Now in the purchase law letter count, that mattered because the jury was asked to determine by the judge that, look, that purchase had to be solely for official use. And so the jury was allowed to then make the determination that, wait, if he bought that gun with the idea that he was going to use it at one of these machine gun shoots, because that wasn't the only one he had, then if I find him guilty of the possession count, then I can find him guilty of the law letter count because I would find inherently that he bought it not for the sole official use. But the problem with that is, and I'm much less sympathetic on the false statements, is he made false statements even aside from that in some of those letters, I think. And so maybe you can make an argument that that sort of infected the jury's verdict as an instructional matter, but I don't know that you could possibly say that there was insufficient evidence on the misrepresentation or the false statements. Here's why we can't make that determination, Your Honor, respectfully. He wasn't allowed to challenge two elements, falsity and materiality. What the government did in imposing the new requirements, in that instance, the other requirement, not the official use requirement, but the future potential purchase requirement, and said, look, the regulation only says that the police chief has to be interested in the demonstration. However, what the court instructed the jury is that there effectively had to be a genuine interest in purchasing that machine gun. That is not correct. That took away Mr. Wendt's ability to challenge the meaning of his statement as well as the materiality of his statement. And so we weren't allowed to induce a trial or get discovery on, you know, what the ATF did in other transactions, what they did in some of his personal other transactions, or what he thought that actually meant. The bottom line is, while the ATF says that a disagreement with the law doesn't give Mr. Wendt the right to lie to avoid it, what we would say is, the ATF's disagreement with the law doesn't give it the right to create new law, and that's exactly what happened here. And with that, I would like to reserve the remainder of my time. Thank you. Thank you. Mr. Hanson. Good morning. May it please the Court. Kyle Hanson on behalf of the United States. On the possession count, I want to make clear what the defendant is asking for. He's asking for a categorical exemption that lets him have any machine gun at any time for any purpose. And Congress could have said that if they wanted to. They could have made an exemption for all police officers to possess whatever machine guns they wanted. It also doesn't say official duties. It says by or under the authority of the subdivision. And I actually think that by is a pretty good argument, too. But under the authority, I think, has to be a slam dunk. Because, yes, he was using it for other purposes. But as I've already mentioned, the FBI does it regularly. Every six months they do this. I've heard stories of the marshals doing it. I mean, this is what happens. And so I don't know that we want to start going down this road. So to answer that, Congress tied it to the authority of the governmental agency. And when you think about what does the government do, it's doing official acts. And every court that has addressed this exception has tied it to the official duties of law enforcement. So when I went out to a shoot about 15 years ago with the FBI as part of the Citizens Academy, the FBI agents were violating the law.  I think it's tied to the facts of every use. But official duties of the FBI in that case could be that part of their duties are to have public outreach and invite people like judges to come learn about what the FBI does. Yeah, but more broadly, even under the Second Amendment, I think this is in here to protect against a Second Amendment challenge. Because the government didn't provide this. But we went back and looked at founding era and Reconstruction era evidence. And for every exceptional weapon, Bowie knives, everything, marshals and law enforcement were completely accepted, including taking it to their home, taking it on vacations. That's what the Second Amendment required. So if we get into the Second Amendment, I think you have big problems. But if you read this consistently with the Second Amendment, then you don't run into the problems, the interpretive problems. Do you have other evidence that shows that we took weapons away from marshals, sheriffs, chiefs of police at the time of the founding, special arms? I don't. And like you said, I haven't done the research on whether that's tied to the Second Amendment or that's tied to the government that is authorized to allow… But it's the government's burden. I mean, the government has the burden of showing it's consistent with the Second Amendment. Yeah, but what this court has said is that the Second Amendment applies to the people and the people is the entire populace. It's not a subset where some people get more rights than others. No, but that's not true with what the law was at the time of founding. I mean, it is true that… I mean, even before the founding, go back to the English High Women's Act. You know, they had prohibition on the possession of a hidden dirk, right? But law enforcement officers, the agents of the Crown, Crown officers, were exempted, right? And if you go through the law as it was developed under the Second Amendment, you're going to find all these ordinances and statutes all over the place that say, blah, blah, blah, I can't possess a Bowie knife. That's a good example because dirks and Bowie knives were special weapons that were oftentimes prohibited. But those laws almost always made exceptions for law enforcement officers without restriction. But whether that is something that's protected by the Second Amendment is a separate question.  Not in the second step of brewing. I mean, I agree with you, the people includes them, but when you get to the second step of brewing, it's your obligation as a government attorney to justify the regulation. And I don't mean to interrupt, but you can't just say, that's not the concern of the Second Amendment. And I guess I'm a little confused by this, but the Second Amendment is not a right of the government and the government actors exercising their official duties. So to that extent, 922.0 and the way every court that's addressed this has found is that the special right to possess dangerous and unusual weapons is tied to that officer exercising their official duties. And that's all that's involved in this case and what Instructor 29 tied it to. But that's just not true. I mean, that's the problem. That's just not true under the Second Amendment. It's just plainly not true. It did not happen that way. Judge Erickson is right. The regulations at the time of the founding were completely the opposite of what you're saying. But again, it's not the right of the people that the Second Amendment is talking about. It's the right of those officers at the time of the founding to exercise their government authority through their official acts. But that was not the rule. That's what I'm telling you. That was not the rule. Okay, well, we'll have to disagree on that. What evidence do you have? Founding error evidence. I mean, I don't mean to beat you up, but it's your obligation under brewing. And if I don't have it on me right now, and it's not something that was explored in the district court, it's not an argument that was pressed in the district court by the defendant, there was no fight over founding error rights of police officers to have. You also have another problem with Heller, which nobody's identified or talked about. Heller says special weapons can be accepted for ordinary law-abiding citizens. And I think that was Scalia carefully, very carefully crafting that law enforcement are not ordinary. That, in fact, there are special rights that accrue to law enforcement. Now, I'm reading something into that, but if you look at the history, that's perfectly consistent with the history as well. So color me very concerned because I think you're probably misreading the statute. I know you're misreading the Second Amendment right. Okay. But what this comes down to is the instruction, Instruction 29, tying it to official duties. And I think every case, it's going to be a fact question of whether that officer is exercising their official duties. Do we want that? Is that a good idea? Yes. It is a good idea. So if you have a law enforcement officer that has a gun with them, a SWAT team officer, and they have the gun in their car, and they stop to grab dinner, which is not part of their official duties, right? Theoretically, under your view, they could be prosecuted. No. To step back, I don't think that would be charged in the first place. But beyond that, it becomes a jury question. And this is a question that is not foreign to the law. It's present, like I said, in every case that's decided this. But it's also present in the rights of police officers in the First Amendment context, in 1983 context. It's always tied to their official duties. And that's all we're asking for here, is that the jury be instructed that they should consider whether the officer is exercising their official duties. But you don't disagree that a prosecutor could charge somebody for stopping for a lengthy dinner or leaving the gun in the car when they go see a play at night, meaning to return it to the office but forgot? I mean, I know that you say it wouldn't be charged, but theoretically your rule would allow that. No, and I think, I mean, in any context, a prosecutor could charge something that doesn't end up being a legitimate charge. And that's why we have juries answering those questions. And in the really extreme cases, like Vest, we have courts answering on a vagueness inquiry. But that doesn't change that the jury in this case was given instruction tied to official duties. And not only that, it's not just, was Brad Wendt exercising the authority at that public machine gun shoot for his gunshot? It's, did he reasonably believe he was exercising the authority? And the jury found this wasn't even a close case on the authority issue. Is opposing counsel right that there were law enforcement officers that went and shot without paying any fee at all? That was his testimony. And I don't think that's determinative here because the fact that he has friends who are law enforcement officers who showed up to the event doesn't change the true nature of the event. I don't see that, I mean, you've lost me because I don't see that as any different than the FBI inviting ordinary citizens along with law enforcement officers to shoot. I don't know how that is different from the situation you're describing. Maybe it's because he also owned a gun shop. We can see if that's distinguishable. But I just don't see the difference. It's different because he was not doing it as the city of Adair hosting a law enforcement shoot. He was doing it as Brad Wendt, gun dealer for BW Outfitters. He's charging members of the public to shoot. There are no police flyers. There's no police training going on. There's no outward expression of any sort that this was a police event. It just happens that some of the people showed up were law enforcement. There's no evidence anywhere that he put this out as a law enforcement event, that he was sending it out to sheriff's offices and everything. Instead, the evidence was he's posting about it on Facebook. He's putting it in the Iowa Pew Pew group saying, come shoot all these cool machine guns to members of the public, not to law enforcement. Suppose he put a sign out that said the city of Adair sponsored shooting. City of Adair Sheriff's Department sponsored shooting, but there were no other indications that the city of Adair was doing it. Are we going to say that that mere sign, if he would put that sign out, was enough to bring this out of the prosecution, but without the sign and without mentioning the city of Adair, that's where it goes awry? That's a fact he could have presented to the jury, and the jury ultimately gets to make that determination. Was this done under the official duties of the city? Well, that's what I'm asking. I'm asking had he presented that evidence, would the government have? There's actually a picture of the city of Adair sponsors this shooting, a big poster. Would the government have prosecuted that? I think we still would have, because it is only superficially then a government action. And that's like the Thunic case, where you had local prosecutors and a local police chief who got machine guns purportedly under their authority as officials, and then used them for private use. And the court in that case rejected the idea that all we need is that thin pretext that this was official use. You've heard me before, but I can't. I mean, I'm so skeptical, because you are actually describing the FBI shoot that I went to. I mean, the way we're discussing this. So, I mean, I don't see a difference between them. We're just going to have to agree to disagree on this. Yeah, and if I could use my final three minutes to turn to the false statement counts, which were 10 out of the 11 counts that were convicted in this case. And the problem there is there's a right and wrong way to respond to the ATF's  And as much as Mr. Wendt wants to make the case about, was the ATF right in how it interpreted the law, what it ultimately boils down to here is he lied. And that in the Bryson case, the Knox case, the Supreme Court makes clear that it doesn't matter. The legitimacy of the government's inquiry does not affect whether he's guilty under Section 1001. And specifically in the context of gun cases, the Holden case, the Bledsoe case, the underlying legality of the gun possession does not matter. Instead, the government has an independent interest in having accurate information. So he had a method to challenge the ATF's interpretation, and that's not foreign to this court. We've seen administrative cases about pistol braces. The Supreme Court has had recent cases about bump stocks and ghost guns. So there is a legitimate way for him to challenge that. And instead, he lied. And he lied in a way that was capable of influencing the ATF's actions. And specifically, we have ATF testimony that said they look for these statements of possible future purchase and official use, that they would deny transfers if the letters didn't contain those. We have the NFA handbook that just so happens Mr. Wendt's law letters mirrored word for word the sample law letters that were provided in that handbook, showing, again, the materiality of what ATF is looking for in the letters. And we also know that Mr. Wendt knew what they wanted to see. So early on, there's that denial with Markham, where he puts in the law letter that he wants it for officer familiarization with the firearm, and the ATF pushes back and says, it's not allowed for officer familiarization. So he, from that point on, every letter includes a statement of potential future purchase or something very similar to that. So ultimately, what happened in this case was the defendant lied to get machine guns for his personal use, lied to get machine guns for his personal profit, and also abused his authority as police chief to host a public machine gun shoot for the profit of his business. The government asks that this court affirm his convictions. Thanks. Thank you. Mr. Kleinfeld, you have 19 seconds. We'll add another minute on if you'd like it. I'll take it. Thank you, Your Honor. No court has ever upheld the prosecution or conviction of a police officer under 922-0. The Thunic case was not a 922-0 case, which means there's no law enforcement exception. No court has ever applied an official use restriction as the government's trying to apply here. No court has ever relied on the violation of a registration as a requirement for a conviction in a gun case. The unconstitutionality of the possession count is inextricably tied to the false statements count because what happened is a separate problem there. They actually charged that false statement case like a firearms violation because he wasn't allowed to challenge the meaning of his statement, the falsity, or the materiality of his statement. The district court effectively granted a summary judgment on those, instructed the jury. He was not allowed to adduce the record that we wanted on that. Lastly, with respect to the quote-unquote right to lie, the Holden case, the Bryson case, that's a collateral constitutional challenge to the statute after the fact. Those cases are not about falsity and materiality. For those reasons, I would ask that this case be remanded, that the possession count be dismissed, and that the other count be remanded for a new trial. Thank you. Thank you. Thank you to both counsel for your argument here today. Very helpful.